**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KRASIMIR KOLAROV,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **DALLAS COLLEGE,** | § | |
| | § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Krasimir Kolorov, Plaintiff in the above-styled and numbered cause ("Plaintiff" or "Mr. Kolorov"), and files this Original Complaint against and complaining of Dallas College, formerly known as Dallas County Community College District, Defendant in the above-styled and numbered cause (hereafter referred to as "Defendant" or "Dallas College"). Plaintiff would respectfully show the Court the following:

### I.
### THE PARTIES

1.      Plaintiff is an individual residing in Dallas County, Texas.

2.      Defendant is a college or college district organized and existing pursuant to the laws of the State of Texas for the purpose of operating a system of community colleges or campuses in and around Dallas County, Texas.  Also, Defendant is a "state actor" within the meaning of applicable law and the actions complained of herein comprise "state action." The address of Defendant's administrative office is 1601 Botham Jean Blvd., Dallas, Dallas County, Texas 75215. Defendant may be served with process by serving its Chancellor, Dr. Justin Lonan, at the foregoing address pursuant to the Texas Rules of Civil Procedure.

**II.**

**JURISDICTION AND VENUE**

3.        This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367;

the provisions of 42 U.S.C. §§ 1981, 1983, and 1988; Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.*, as well as under the 14th Amendment to the United States Constitution.

4.        Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b), as all

or part of Plaintiff's claims accrued in Dallas County, Texas, which is within this District and

Division.

**III.**

**FACTUAL BACKGROUND**

5.        Plaintiff Krasimir ("Krasi")  Kolorov was an employee of Dallas College (formerly

known as Dallas County Community College District) for approximately fifteen years, serving as

a coach, athletic director, and adjunct faculty member. At the time Dallas College terminated his

full-time employment in October 2023, Plaintiff was athletic director for Dallas College's Cedar

Valley campus, as well as assistant coach of Cedar Valley's women's soccer and women's

volleyball teams. In addition, for no additional salary, he was Director of E-Sports for all seven

campuses of Dallas College. His adjunct teaching position has not been terminated, but it is a part-

time position.

6.        During his tenure at Dallas College, Plaintiff served under three different

supervisors and his performance reviews have all shown that he met or exceeded expectations.

Over the years, he moved from staff to administrator. Under Dallas College policies,

administrators, as well as faculty, are contract employees. Dallas College Policy DD(LOCAL). As

an administrator, Plaintiff was entitled to written contracts, renewed automatically unless he was

informed otherwise. Dallas College Policy DCA(LOCAL).

7.      In violation of its own policies, Dallas College has failed to compensate Mr. Kolarov as an administrator, which it has admitted in its notice of termination, attached hereto as Exhibit "A". According to Dallas College, by improperly classifying Plaintiff, the College now owes him $7,728.28 in accrued but unpaid business and travel allowances and vacation leave. However, Dallas College refuses to pay such amount unless Plaintiff executes a full release of Dallas College. See Confidential Separation Agreement and General Release, attached hereto as Exhibit "B."

8.      In terminating Plaintiff, who at all relevant times has been an administrator as a matter of law and according to Defendant's policies, Dallas College failed to afford him due process. Because he was an administrator, Plaintiff had a constitutionally protected property interest in his employment contract. By depriving him of such property interest without due process, Dallas College violated his rights under the Fourteenth Amendment to the United States Constitution.

9.      Further, Plaintiff was subject to discrimination by Dallas College based on his race and his sex. Specifically, he applied for two positions within Dallas College at the end of 2022 and in early 2023, but was denied those jobs because the college wanted to fill the positions with women, in one case with an African-American woman.

10.      In December 2022, Plaintiff, who is a Caucasian male, applied for the position of women's soccer coach at Dallas College's Richland campus, and in April 2023 he applied for the position of Athletic Director of Dallas College's Brookhaven campus.

11.      Regarding the Richland campus coaching position, he was asked in January 2023 by Sadiaa Jones, "Are you sure you want to interview?" Ms. Jones, Dallas College's Director of Athletics, told him that they already had very strong female candidates, and "we want a female."

That position was filled with a Caucasian female.

12.     When Plaintiff applied for the Athletic Director position at the Brookhaven campus, he interviewed with a four-member committee, but again Sadiaa Jones told him, "You know what we are looking for," and he did not get a final interview. That position was filled with an African American female.

13.     In August 2023, Plaintiff told Ms. Jones that with his duties as Cedar Valley campus' Athletic Director, and coaching volleyball and soccer (which also required him to drive the team bus), he could not continue to be Director of E-Sports for all seven campuses.

14.     On October 20, 2023, Plaintiff received notice that his position would be terminated effective October 31, 2023, but that he was relieved of his duties effective immediately. No due process hearing was offered, nor was Plaintiff presented with the specific charges against him, or given any meaningful opportunity to refute such charges.

**IV.**
**CAUSES OF ACTION**

15.     ***Alternative Pleadings, and Incorporation of Factual Background***.  To the extent necessary, each of the claims set forth below is pleaded in the alternative. Further, to the extent necessary, all allegations set forth above in the Factual Background section of this Complaint are hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

16.     ***Deprivation of Due Process, brought pursuant to 42 U.S.C. § 1983***.  At all times relevant hereto, Defendant was/is a college or college district existing under the laws of the State of Texas, and therefore a State actor, acting at all times relevant hereto under color of law.

17.     42 U.S.C. § 1983 prohibits Defendant from depriving Plaintiff of his rights, privileges, and/or immunities secured under the United States Constitution.  All of the wrongful

conduct by Defendant, as described above, is a result of the policies of Dallas College, as written and/or as applied to Plaintiff. Additionally, all of the wrongful conduct described herein was caused by policymakers of Defendant, including its Chancellor, or, alternatively, by Jones as the designee of the Chancellor or Defendant's Board of Trustees, and such conduct was sanctioned, through action and/or inaction, by Defendant's Board of Trustees and others, all singularly or collectively acting as policymakers for Defendant in this case. Alternatively, the termination of Plaintiff in this fashion was delegated by Defendant's Board of Trustees to Defendant's Chancellor, who designated it to Jones or through others to Jones, each of them, and all of them collectively, acting as policymakers for Defendant in this case.

18. As set forth above, Defendant deprived and/or improperly diminished Plaintiff's right to procedural due process, as secured by the Fourteenth Amendments to the United States Constitution.

19. Defendant violated Plaintiff's right to procedural due process by failing and/or refusing to conduct, or even attempt to conduct, a thorough and timely investigation into the allegations and accusations made against Plaintiff that formed the basis of his termination, and such failure and/or refusal included not questioning or interviewing Plaintiff. Defendant never provided Plaintiff with the reasons he was being terminated before terminating him, in violation of Plaintiff's constitutional rights. Defendant has deprived Plaintiff of his property right in his employment without providing Plaintiff any procedural due process as required by the Fourteenth Amendment. Plaintiff had a "legitimate claim of entitlement" in his continued employment as an administrator, based on the provisions of Defendant's written policies with regard to administrators as contract employees. *See Perry v. Sinderman*, 408 U.S. 593, 602 (1972). "A person's interest in a benefit is a property interest for due process purposes if there are such rules or mutually explicit

understandings that support [his] claim of entitlement to the benefit and that [he] may invoke at a hearing." *Id.* at 601 (citations and internal quotations omitted).

20.     Plaintiff had a reasonable expectation that his employment would not be terminated for the reasons set forth in the letter he received. The only disciplinary event cited in the letter was from April 2022 – eighteen months prior to the termination. Plaintiff had continued to perform his duties, under the oral and/or written employment contract between himself and Defendant. He was never informed that his contract had not been renewed.

21.     Defendant's actions deprived Plaintiff of his property interest in his employment contract. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by failing and/or refusing to provide Plaintiff with a full due process hearing prior to his termination, depriving and/or improperly diminishing Plaintiff's protected property interest in his ongoing employment contract, his performance thereof, and his rights thereunder. Defendant impinged, deprived, and/or improperly diminished all of Plaintiff's foregoing protected interest and freedoms without due process of law.

22.     Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by preventing him from any meaningful opportunity to be heard. Defendant failed and/or refused to provide Plaintiff with the minimal procedural due process and/or the procedural redress system incorporated into Dallas College's policies, procedures, guidelines, rules, practices and/or regulations, effectively denying Plaintiff the due process rights to which he was entitled, thus, violating his right to procedural due process guaranteed by the United States Constitution.

23.     In the alternative, Defendant's actions and/or conduct further constitute a deprivation of due process, as each and all of the above acts and/or omissions were made in recognition of, as a part of, and/or as a result of the policies, practices, and/or customs of

Defendant, created by or through policymakers and/or persons to whom Defendant effectively delegated policymaking authority.

24.     Defendant's conduct constitutes violations of Plaintiff's rights to procedural and substantive due process.  As a result of Defendant's conduct, Plaintiff has been injured and/or damaged.  Accordingly, Plaintiff seeks to recover his damages from Defendant, including, without limitation, loss of income and benefits, mental anguish and nominal damages, and to recover any and all other remedies afforded and/or available under law and/or in equity, including but not limited to injunctive relief, equitable relief, and his attorneys' fees and costs.

25.     ***Breach of Contract.*** As set forth above, Defendant breached Plaintiff's employment contracts and/or agreement, including Dallas College's own policies, by failing and/or refusing to abide by and/or comply with the terms thereof, including without limitation, failing to correctly reflect Plaintiff's administrator status in its internal classification system, so as to deprive him of his business and travel allowance and vacation pay. Dallas College's initial failure to pay these amounts breached its contract with Plaintiff, and its current refusal to pay such amounts unless Plaintiff executes a global release is a further violation of Dallas College's contractual obligations to Plaintiff. Both by withholding such funds, in at least the amount of $7,728,28, and through its wrongful termination of Plaintiff, and its discrimination against Plaintiff, Dallas College has breached its contract with Plaintiff. As the direct and proximate result of the breaches of Defendant, Plaintiff has sustained damages for which he here sues.

26.     ***Federal and State Law Discrimination Claims.*** Plaintiff sues for discrimination based on his race, pursuant to 42 U.S.C § 1981. Further, plaintiff intends to timely dual-file a charge of discrimination in employment against Dallas College, in administrative proceedings with the Texas Workforce Commission Civil Rights Division and the Equal Employment Opportunity

Commission, in which he will assert that he was treated in a disparate and discriminatory manner due to his sex or gender, as well as race, in violation of federal and state law (including Title VII of the 1964 Civil Rights Act and the Texas Labor Code).  Once he has exhausted his administrative remedies with respect to his state and federal law discrimination claims, upon receipt of his right to sue letter(s), from the Texas Workforce Commission and/or from the EEOC, Plaintiff will seek leave to amend this Complaint to add his claim for discrimination in hiring by Dallas College under Title VII and/or the Texas Labor Code. The conduct of Dallas College in refusing to consider him for positions set aside for applicants who are females, and preferably African American females, has caused Plaintiff damages for which he here sues.

## V.
## REQUESTED RELIEF

27.     As the direct and/or proximate result of the actions of Defendant complained of herein, Plaintiff has been damaged and seeks recovery of the full measure of relief and damages against Defendant, including but not limited to actual and/or economic damages, compensatory damages, and all other equitable and injunctive relief which may be available to him, including, if applicable, injunctive relief and/or equitable relief requiring Defendant to provide him with a full due process hearing, reinstatement, or assignment to one of the positions he was denied.

## VI.
## FEES, COSTS, AND INTEREST

28.     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay such firm for its such reasonable and necessary services.  In addition to and without waiving and/or limiting any other relief requested herein, Plaintiff is entitled to and seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law,

in equity, and/or pursuant Chapters 38 of the Texas Civil Practice and Remedies Code, and 42 USC § 1988(b)-(c).

29.     Plaintiff further seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.
## CONDITIONS PRECEDENT

30.     All conditions precedent to the relief being sought by Plaintiff in this matter have been performed, have occurred, and/or have been waived.

## VIII.
## DEMAND FOR JURY TRIAL

31.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a jury trial, and has or will tender the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing, Plaintiff recover judgment against Defendant and be awarded:

(1)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically);

(2)     his litigation expenses and costs, including but not limited to his reasonable and necessary attorneys' fees and costs and any applicable expert fees;

(3)     pre-judgment and post-judgment interest at the maximum rate permitted by law;

(4)     costs of court;

(5)     such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,


_____/s/ *Frank Hill*_____

Frank Hill                              09632000
fhill@hillgilstrap.com
Stefanie Klein                          11565650
sklein@hillgilstrap.com


HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas  76013
(817) 261-2222
(817) 861-4685 Facsimile

ATTORNEYS FOR PLAINTIFF

# Exhibit A


October 20, 2023

Krasimir Kolarov
6806 Crestland Avenue
Dallas, Texas 75252

Dear Mr. Kolarov,

This letter serves as written notice that your position, Senior Manager, Athletics, will be terminated, effective October 31, 2023. This decision is based on a pattern of unacceptable performance and behavior, particularly as it relates to compliance with National Junior College Athletic Association requirements, and a general disregard for Dallas College policies and procedures.

On multiple occasions, your supervisor has provided you advice and counsel regarding these issues and the need for improvement. Indeed, you received a final written warning in April 2022 that outlined your performance deficiencies, the expectation that you would comply with all policies and procedures relative to your assigned areas, and the consequences if you failed to do same. Despite such efforts, the performance issues persist.

As a College employee and a Senior Manager, you are expected to demonstrate professional competence and high ethical standards in the performance of your duties, including avoiding any action that is (either in actuality or in appearance) in violation of law, policy, or the ethical standards of the College. The conduct described above conflicts with those expectations, the responsibilities attendant to your position, and the mission of the College. The Division simply cannot continue to operate in this manner.

Effective immediately you are relieved of your obligation to report to work. You will, however, continue to receive full pay and benefits through your separation date, October 31, 2023. In addition, the College recognizes that due to an administrative error you were incorrectly classified as "staff" instead of as an "administrator. Accordingly, the College agrees to pay you one-time lump sum in the total gross amount of $7,728.28, less applicable withholdings and deductions, the sum of which is representative of the following:

- The total amount of the business and travel allowance you would have received for two years of employment if the classification "administrator" had been properly applied.
- The total value of the additional vacation leave you would have accrued during two years of employment if the classification "administrator" had been properly applied.

The enclosed Separation Agreement and Release (the "Agreement") outlines the terms under which payments will be paid to you. Please review the Agreement carefully. Per its terms, you

have twenty-one (21) days from the date of receipt of the Agreement to consider it and, if you would like, to consult with an attorney before signing the Agreement. If you choose, you may return the Agreement prior to the expiration of the twenty-one (21) days. Once signed, you will have seven (7) days from the date of signature to revoke the Agreement. Notice of revocation must be in writing and delivered to the attention of Tricia Horatio, Deputy General Counsel, Dallas College, 1601 Botham Jean Blvd, Suite 208, Dallas, Texas 75215-1816, or thoratio@dallascollege.edu.. Please note that all payments governed by the Agreement will be paid after the expiration of the seven (7) day revocation period and distributed according to the payroll election on file with the College. After you have read and signed the Agreement, please mail it to my attention Dr. Rebecca Tuerk, 1601 Botham Jean Blvd., Dallas, Texas 75215; or email a scanned copy of the original to rtuerk@dallascollege.edu.

In the meantime, please make mutually agreeable arrangements with Misty Crocker, misti.liles@dallascollege.edu, to return all District property in your possession and remove any personal belongings from your assigned workspace. Misti can also respond to any questions you may have regarding your employee benefits.

Please feel free to contact Dr. Rebecca Tuerk, Senior Director, Employee Relations, if you have any questions or require additional information.

Sincerely,

Sadiaa Jones
Director, Athletics
Dallas College

Cc:   Dr. Rebecca Tuerk, Senior Director, Employee Relations, Dallas College
      Dr. Beatriz Joseph, Vice Chancellor, Student Success, Dallas College
      Louis Burrell, Chief Human Resources Officer, Dallas College

# Exhibit B

## CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

This is a Confidential Separation Agreement and General Release ("Agreement") by and between Krasimir "Krasi" Kolarov ("Kolarov") on the one hand and the Dallas College ("College") on the other. Kolarov and College collectively are referred to herein as the "Parties" or singularly as a "Party."

### RECITALS

**WHEREAS**, Kolarov's employment with College will terminate, effective October 31, 2023 ("Separation Date").

**WHEREAS**, an internal review of Kolarov's position classification has revealed that Kolarov was misclassified as "staff" instead of as an "administrator," as requested by his supervisor in July 2021;

**WHEREAS**, the application of the correct employee classification at that time would have entitled Kolarov to a business and travel allowance and additional leave benefits as part of his total compensation;

**WHEREAS**, Federal Law allows for recovery of up to two (2) years of back pay;

**WHEREAS**, the failure to apply the correct employee classification and to compensate Kolarov accordingly was made in error, without knowledge, fraud, or misrepresentation on the part of either party;

**WHEREAS**, the College, in accordance with applicable laws, wishes to pay Kolarov the total sum of the business and travel allowance and leave benefit Kolarov would have been paid for two years of employment if the classification "administrator" had been properly applied;

**WHEREAS**, the parties to this Agreement wish to separate Kolarov and to resolve this matter without recourse to litigation;

**NOW, THEREFORE**, in consideration of the mutual promises and agreements herein contained, including the recitals set forth above and the terms described in Paragraph 1 below, the sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      **Terms.** In exchange for execution of this Agreement, Kolarov's release of claims below, the other promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

       a.      **Final Pay.** Irrespective of whether Kolarov signs this Agreement, Kolarov shall receive Kolarov's full pay and benefits through the Separation Date, including a payout of any accrued, but unused vacation.

       b.      **Business and Travel Allowance Payment.** College agrees to pay Kolarov a one-time lump sum payment in the total gross amount of $2,400, less applicable withholdings

and deductions, which sum represents the total amount of the business and travel allowance Kolarov would have been paid for two years of Kolarov's employment if the classification "administrator" had been properly applied.

      c.    **Leave Payment**. College agrees to pay Kolarov a one-time lump sum payment in the total gross amount of $5,328.28, less applicable withholdings and deductions, which sum represents the total value of the additional vacation leave Kolarov would have accrued during two years of Kolarov's employment if the classification "administrator" had been properly applied.

      d.    **Conditions of Performance.** Payment of the Business and Travel Allowance Payment and the Leave Payment are subject to execution and non-revocation of this Agreement. The Business and Travel Allowance Payment and the Leave Payment will be made on the College's first regularly scheduled payroll date following the Separation Date or as soon thereafter as practicable, provided the release under Paragraph 2 is not revoked. At year end, College will issue an Internal Revenue Service ("IRS") form W-2 or Form 1099, as may be applicable, to Kolarov for all wages, including the Business and Travel Allowance Payment and the Leave Payment.

2.     <u>**General Release & Covenants Not to Sue.**</u>

      a.    In consideration of the terms described in Paragraph 1 above, together with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Kolarov, together with Kolarov's agents, representatives, attorneys, assigns, and designees, hereby knowingly, voluntarily, fully, finally, and completely SETTLE, RELEASE, AND FOREVER DISCHARGE, to the maximum extent permitted by law, the College Releasees (as defined below) from all claims, disputes, grievances, demands, causes of action, liabilities, injuries, and damages, of whatever kind, character, or nature, known or unknown, arising from, relating to, or connected with acts or omissions occurring at any time prior to and including the date Kolarov executes this Agreement. This general release includes without limitation all claims or damages that in any way arise from, relate to, or are in any way connected with the Kolarov's employment with and/or separation from the College, regardless of whether or not same (i) are presently known or unknown, (ii) have been specifically referenced, claimed, asserted, or made by the Parties, or (iii) are statutory, contractual, or common law in nature or basis. As used in this Agreement, the term "College Releasees" means College, as well as its campuses, employees, attorneys, partners, agents, assigns, representatives, designees, insurers, plan administrators, board members, subsidiaries, affiliates, alleged joint employers, and other related persons or entities, including their predecessors, successors, and the assigns, heirs, privies, predecessors, successors, and insurers of each of the foregoing persons and entities in their individual, corporate and official capacities.

      b.    Without limiting the generality or comprehensiveness of Subparagraph 2(a), Kolarov knowingly, voluntarily, fully, finally, and completely WAIVES, RELEASES, AND FOREVER DISCHARGES, to the maximum extent permitted by law, the College Releasees from all claims, actions, causes of action, or demands existing as of the date of this Agreement, including without limitation any and all claims for injunctive relief; attorneys' fees; expenses; costs; actual, compensatory, exemplary, or punitive damages; physical injuries; personal injuries; emotional injuries; mental anguish; physical pain and suffering; wrongful discharge; any claims Kolarov may have under, without limitation, Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 1981,

the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Texas Labor Code, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974, the Sarbanes-Oxley Act of 2002, the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Worker Adjustment and Retraining Notification Act, the Uniformed Services Employment and Reemployment Rights Act, and any other civil rights statutes; harassment and/or discrimination because of sex, race, color, national origin, religion, age, disability, sexual orientation, veteran's status, the filing of a workers' compensation claim, or any other protected classification; retaliation; incapacity; failure to pay proper wage, minimum wage, and/or overtime wages; unpaid wages; loss of wages; loss of earning capacity; loss of job security; humiliation; physical impairment and/or disfigurement; loss of consortium; harm to reputation; libel, slander, or defamation; medical expenses; personal property damage, loss, or diminution in value; negligence; gross negligence; assault or battery; strict liability; malice; invasion of privacy; intentional infliction of emotional distress; negligent infliction of emotional distress; loss or diminution of career advancement; loss of dignity; any and all claims arising under any other federal, state, or local statute, law, ordinance, rule, regulation, or order prohibiting employment discrimination or retaliation; any claim under tort, wrongful discharge, breach of contract, or breach of agreement; and any other theory, claim, or cause of action whatsoever, whether known or unknown.

    c. By signing this Agreement, it is Kolarov's intent to waive and release all claims and potential claims against the College Releasees that can be waived and released under law. Kolarov understands the release of claims contained in this Agreement does not release rights to benefits that Kolarov may have under the laws governing COBRA, unemployment benefits, disability insurance, and workers' compensation benefits. Kolarov further understands that nothing in this Agreement prohibits Kolarov from asserting rights to any vested benefits to which Kolarov may be entitled pursuant to the terms of applicable plans or law.

    3. **No Future Actions**. Kolarov acknowledges that except as set forth in Paragraph 1 of this Agreement Kolarov is not entitled to any other wages, salary reimbursement, benefit, interest, or opportunities from the College up to the date Kolarov executes this Agreement. Kolarov specifically recognizes and acknowledges that execution of this Agreement will forever extinguish Kolarov's right to proceed against any of the College Releasees in any court for damages, wages, expenses, costs, compensation, or the like for any claims arising prior to the effective date of this Agreement.

    4. **No Interference with Rights.** Kolarov represents and warrants that Kolarov has not filed any lawsuits or actions with any federal, state, or local court against any of the College Releasees, nor has Kolarov filed any charges or other complaints with any federal, state, or local agency against any of the College Releasees arising out of the matters addressed in this Agreement. Notwithstanding anything herein to the contrary, the Parties agree that nothing in this Agreement shall be construed to limit Kolarov's ability to file a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, or any other federal, state, or local government agency or commission ("Government Agencies"). Further, the Parties agree that this Agreement does not limit Kolarov's ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information, without notice to College. Notwithstanding the foregoing, Kolarov waives Kolarov's right to recover individual monetary damages in any charge, complaint, or lawsuit filed by Kolarov or by anyone else on

---

Kolarov's behalf except where such waiver of individual relief is prohibited by law.

5. **ADEA Release and Revocation Period.**

      a.    Pursuant to the Older Workers Benefit Protection Act ("OWBPA"), Kolarov hereby knowingly and voluntarily agrees to waive and release any right or claim under the Age Discrimination in Employment Act of 1967 ("ADEA") against the College Releasees. In this regard, Kolarov agrees and warrants that Kolarov has carefully read and fully understands the provisions of this Agreement, and that Kolarov is receiving consideration from College that is at least equal to anything of value to which Kolarov is otherwise entitled. Kolarov is not waiving or releasing any right or claim that may arise under the ADEA after Kolarov signs this Agreement. Kolarov has the right to, and should, consult with an attorney before signing this Agreement.

      b.    Kolarov has twenty-one (21) days from the date Kolarov receives this Agreement to consider it and sign it. If Kolarov chooses to sign this document, Kolarov has seven (7) days to change Kolarov's mind and revoke the Agreement (the "Revocation Period"). If Kolarov chooses to revoke the Agreement, Kolarov must deliver a written notice of revocation to Tricia Horatio, Deputy General Counsel, Dallas College, 1601 Botham Jean Blvd, Suite 208, Dallas, Texas 75215-1816, thoratio@dallascollege.edu. Any such revocation must be actually received by College within the Revocation Period or it will be null and void. College and Kolarov agree that this Agreement shall not become effective or enforceable until the Revocation Period has expired with no revocation taking place.

6.    **Cooperation**. Subject to the "No Interference with Rights" section above, Kolarov agrees to reasonably cooperate with College: (a) regarding the transition of any business matters Kolarov handled or had involvement with on behalf of College; and (b) in the defense or prosecution of any claims or actions now in existence or which may be brought in the future against or on behalf of any of the College Releasees that relate in any way to events or occurrences that transpired while Kolarov was employed by College. Kolarov's cooperation in connection with such claims or actions will include, but not be limited to, being available to meet with College's counsel to prepare for discovery or any legal proceeding, and to act as a witness on behalf of College at mutually convenient times. College will reimburse Kolarov for all reasonable, pre-approved out-of-pocket costs and expenses (but not including attorneys' fees, costs, or compensation for time) that Kolarov incurs in connection with Kolarov's obligations under this section of the Agreement, to the extent permitted by law.

7.    **Confidentiality.**

      a.    Subject to the "No Interference with Rights" section above, Kolarov and Kolarov's attorneys and agents agree that all matters related to their negotiations regarding Kolarov's separation from employment or this Agreement, including without limitation the terms and amount paid hereunder, are to remain strictly confidential and shall not be disclosed unless required by law or the judicial process, as explained below, or as permitted by the "No Interference with Rights" section above. The only statement that may be made by Kolarov or Kolarov's attorneys or agents with regard to the monetary consideration paid, the other terms of this Agreement, or the negotiations surrounding this matter is, "The matter has been resolved," or words to that effect. Notwithstanding the foregoing restrictions, Kolarov may disclose the terms of this Agreement to Kolarov's spouse, tax and financial advisors, and attorneys, so long as such persons agree to be bound by the confidentiality terms of this Agreement, and to the IRS in

---

response to an inquiry. If any Party sues to enforce the terms of this Agreement, that Party must file it under seal. If Kolarov is served with a court order, subpoena, or other legal process that calls for disclosure of this Agreement or its terms, Kolarov shall immediately provide College with written notice thereof by first class mail and e-mail to Tricia Horatio, Deputy General Counsel, Dallas College, 1601 Botham Jean Blvd, Suite 208, Dallas, Texas 75215-1816, thoratio@dallascollege.edu., or other legal process.

        b.    Notwithstanding the foregoing, the Parties recognize and agree that the College is a governmental entity subject to Chapter 552 of the Texas Government Code, henceforth the "Texas Public Information Act" or the "TPIA". During the term of this Agreement and thereafter, the College may receive a request(s) for information under the TPIA which may implicate and compel disclosure of information otherwise deemed "Confidential" under this Agreement. In the event of such a request, the College shall withhold from disclosure any information which it may be entitled to withhold under an applicable exemption from disclosure under the TPIA. If it is determined that no exemption from disclosure is applicable thereto and/or if ordered to disclose same by the Texas Attorney General or a court of competent jurisdiction, such disclosure shall not be deemed to constitute a breach of this Agreement.

        c.    The Parties acknowledge that this provision is material and is of the essence of this Agreement, and that the disclosure of the foregoing information, in violation of this provision, shall be deemed a material breach of the Agreement. In the event of a breach of this provision, this Agreement shall not be void. However, the College may bring an action in a court of appropriate jurisdiction to enforce this provision and to recover appropriate damages and attorneys' fees.

        8.    **Non-Disparagement.** Subject to the "No Interference with Rights" section above, Kolarov shall not make any disparaging remarks about any of the College Releasees, verbally or in writing, including without limitation posting on Glassdoor, Indeed, YouTube, Facebook, Twitter, Instagram, Snapchat, blogs, or other public forums, or otherwise take any action that could reasonably be anticipated to cause damage to the reputation, goodwill, or business of any of the College Releasees, or otherwise make remarks that may reflect negatively upon any of the College Releasees. Notwithstanding the foregoing provision, Kolarov may testify truthfully pursuant to compulsory process.

        9.    **Neutral Reference**. Kolarov agrees to direct any person or entity seeking a reference for Kolarov to Louis Burrell, Chief Human Resources Officer, 1601 Botham Jean Blvd., Dallas, Texas, 75215; 214-378-1617; lburrell@dallascollege.edu. In response to such reference inquiries, the College agrees to release only the dates of employment and final position held.

        10.    **Return of College Property**. Kolarov agrees to return all College documents and other property in Kolarov's possession, custody, or control, in whatever form maintained, within three (3) business days of Separation Date.

        11.    **Medical and Attorneys' Fees and Costs.** Except as provided for in this Agreement, it is agreed and understood by the Parties that they shall be fully and solely responsible for paying directly, or otherwise satisfying, their own attorneys' fees, medical expenses, counseling or therapy expenses, costs (including court costs), and other expenses that have been incurred as a result of any and all claims, controversies, or causes of action arising out of or related to Kolarov's employment and/or separation from College.

12.   **Consideration of Medicare's Interests**. Kolarov affirms, covenants, and warrants Kolarov is not a Medicare beneficiary and is not currently receiving, has not received in the past, is not entitled to, is not eligible for, and has not applied for or sought Social Security Disability or Medicare benefits.

13.   **Indemnification**. Kolarov agrees to hold the College Releasees harmless from, and to defend and indemnify the College Releasees from and against, all further claims, cross-claims, third-party claims, demands, costs, complaints, obligations, causes of action, damages, judgments, liability, contribution, or indemnity related in any way to the allegations that were or could have been made by Kolarov with respect to the claims and causes of action released as part of this Agreement, as well as any claims that may be made indirectly against the College Releasees for contribution, indemnity, or otherwise by any third party from whom or which Kolarov seeks relief or damages, directly or indirectly, for the same claims and/or causes of action released as part of this Agreement, regardless of whether such claims are caused in whole or in part by the negligence, acts, or omissions of any of the College Releasees.

Kolarov shall be responsible for all federal, state, and local tax liability, if any, that may attach to amounts payable or other consideration given under this Agreement, and will defend, indemnify, and hold the College Releasees harmless from and against, and will reimburse the College Releasees for, any and all liability of whatever kind incurred by the College Releasees as a result of any tax obligations of Kolarov, including but not limited to taxes, levies, assessments, penalties, fines, interest, attorneys' fees, and costs. Kolarov warrants that Kolarov is not relying on the judgment or advice of any of the College Releasees or legal counsel concerning the tax consequences, if any, of this Agreement.

14.   **No Admissions.** This Agreement is not and shall not in any way be construed as an admission by any of the College Releasees of any acts of liability or fault whatsoever with respect to Kolarov or any other person, or that any College Releasee violated any federal, state, or local law, or that any College Releasee's actions were unwarranted, discriminatory, retaliatory, or otherwise unlawful. College specifically denies and disclaims any liability to Kolarov or any other person or entity.

15.   **Non-Waiver.** Any failure of College to enforce its rights and privileges under this Agreement shall not be deemed to constitute waiver of any rights and privileges contained herein.

16.   **Entire Agreement.** This Agreement supersedes any and all prior agreements, arrangements, or understandings between the Parties regarding the subject matter herein. The Parties acknowledge and agree that there have been no representations, promises, understandings, or agreements made by either Party as an inducement for the other Party to enter into this Agreement other than what are expressly set forth and contained in the terms of this Agreement. The Parties further agree that no evidence of prior promises, commitments, agreements, arrangements, or understandings, nor any oral statements of any kind, can be used to attempt to alter, amend, modify, or in any way change the written terms of this Agreement. Furthermore, the Parties cannot agree orally to alter, amend, modify, or in any way change the terms of this Agreement, and can make such alterations, amendments, modifications, or changes only in a written document that references this Agreement specifically and is signed by an authorized representative of each Party.

17. **Ownership of Claims.** Kolarov represents and warrants that Kolarov is the sole and lawful owner of all rights, title, and interest in and to all released matters, claims, and demands referred to herein. Kolarov further represents and warrants that there has been no assignment or other transfer of any interest in such matters, claims, or demands that Kolarov may have against College.

18. **Governing Law; Jurisdiction and Venue.** This Agreement is made and entered into in the state of Texas and shall be construed and enforced under the laws of the state of Texas, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than the state of Texas. The normal rule of construction that ambiguities shall be construed against the drafter shall not be employed in the interpretation of this Agreement. The Parties agree that the sole and exclusive jurisdiction and venue for any disputes arising out of or related to this Agreement among any of the Parties, the College Releasees, or any other person released hereby shall be in the state or federal courts sitting in Dallas County, Texas.

19. **Severability.** The Parties agree that the provisions of this Agreement are severable and that, if any clause or clauses are found to be unenforceable, the entire Agreement shall not fail, but shall be construed or enforced without any severed clauses in accordance with the terms of this Agreement.

20. **Counterparts.** This Agreement can be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument for the same effect as if all Parties hereto had signed the same signature page. A facsimile or e-mail copy of any Party's signature shall be deemed as legally binding as the original signature.

1. **Representations and Warranties.** The Parties represent and warrant that: (a) they had the option to consult with counsel of their own choosing prior to executing this Agreement and are relying upon their own or their attorney's judgment, belief, and knowledge with respect to the terms and effect of this Agreement; (b) neither of the Parties are relying on the other Party, or the other Party's attorneys, for any advice or counsel, whether same is legal, tax, or other advice; (c) they have not been induced to enter this Agreement by a statement, action, or representation of any kind or character made by the persons or entities released under this Agreement, or any person or persons representing them, other than those expressly made in this Agreement; (d) they are legally competent to execute this Agreement; (e) they have carefully read and understand this Agreement, and have executed it freely, voluntarily, and without duress; (f) they are fully and completely informed of the facts relating to the subject matter of this Agreement, and all enter into this Agreement voluntarily after having given careful and mature consideration of the making of this Agreement; (g) they fully understand and intend this Agreement to be a full, final, and complete resolution of all matters described herein; and (h) they have actual authority to execute this Agreement.

**Employee**

_____
Signature

_____
Printed Name of Employee

Date: _____

**Representative of the College**

_____
Signature

Date: _____